# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
KRIMBILL,[1] BROOKHART, and ARGUELLES[2,]
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Specialist MICHAEL P. WHITEEYES**
**United States Army, Appellant**

ARMY 20190221

Headquarters, Seventh Army Training Command
Joseph A. Keeler, Military Judge
Lieutenant Colonel Joseph B. Mackey, Staff Judge Advocate (pretrial)
Lieutenant Colonel John J. Merriam, Staff Judge Advocate (post-trial)

For Appellant: Lieutenant Colonel Angela D. Swilley, JA; Major Joseph C. Borland, JA; Captain Paul T. Shirk, JA (on brief); Colonel Michael C. Friess, JA; Lieutenant Colonel Angela D. Swilley, JA; Captain Paul T. Shirk, JA (on reply brief).

For Appellee: Colonel Steven P. Haight, JA; Lieutenant Colonel Wayne H. Williams, JA; Major Dustin B. Myrie, JA; Captain Marc J. Emond, JA (on brief).

15 December 2020

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

ARGUELLES, Judge:

An enlisted panel sitting as a general court-martial convicted appellant, contrary to his pleas, of one specification of sexual abuse of a child, in violation of Article 120b, Uniform Code of Military Justice, 10 U.S.C. § 920b (2016) [UCMJ].[3]

---

[1] Chief Judge (IMA) Krimbill decided this case while on active duty.

[2] Judge Arguelles decided this case while on active duty.

[3] Appellant was acquitted of one specification of rape of a child and one specification of sexual abuse of a child, in violation of Article 120b, UCMJ.

The convening authority approved the adjudged sentence of a dishonorable discharge, confinement for five years, total forfeiture of all pay and allowances, and reduction to the grade of E-1.[4]

The case is before the court for review pursuant to Article 66, UCMJ. Appellant raises four assignments of error, one of which merits partial relief.[5]

## BACKGROUND

After appellant and MM were married in December of 2017, MM and her eighteen-month-old daughter, EM, moved in with appellant at Fort Drum. As EM's biological father was not "in the picture," appellant served as a father figure to EM, to include bathing, dressing, and changing her diapers. In early 2018, however, appellant made several inappropriate comments regarding EM. Specifically, he said that she looked like she had "cum dripping from her face" when she spilled milk and that it looked like she was "sucking a dick" when she put a toy carrot in and out of her mouth. Although MM chastised him for these comments, she continued to allow appellant to change EM's diapers and otherwise care for her.

Shortly after the family moved to Vilseck, Germany, in July 2018, MM confronted appellant after finding pornography on his computer. MM also contacted appellant's team leader, Sergeant (SGT) KS, which prompted appellant to send the following text message to SGT KS:

> Hey [SGT KS] there is a real reason why my wife is
> leaving she believes that I sexually touched her daughter

---

[4] The promulgating order contains numerous errors that require correction. First, it incorrectly reflects the initials of the victim. We direct that it be modified to change the victim's initials from "E.W." to "E.M." Additionally, the promulgating order fails to include the portion of appellant's adjudged sentence of total forfeiture of all pay and allowances, which was approved by the convening authority on 27 March 2020. We direct that the promulgating order be modified to correctly reflect this portion of the adjudged sentence. Finally, the promulgating order is erroneously dated 7 February 2020 rather than the date the convening authority took action, 27 March 2020. We direct that the date of the promulgating order be corrected to 27 March 2020.

[5] We have also given full and fair consideration to the matters personally raised by appellant pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), and find them to be without merit.

and as a concerned parent I believe that she needs to get
tested for that I don't want risk of losing my job if it's
true or not

And I would never do anything to hurt her daughter

After appellant's leadership team forwarded his text to Army Criminal Investigation Command (CID), MM told CID that she did not believe appellant touched EM in a sexual manner. MM also had EM physically examined, which revealed no indications of sexual abuse. Shortly thereafter, MM and EM left Germany and moved back to Alabama.

Army CID interviewed appellant twice. During the first interview in August of 2018, although his answers were somewhat confusing and non-responsive, appellant stated that he did not believe EM was safe around him and "I mean yeah I'm going to have urges, but I think that I need to stop it." Appellant later said that it was safe for EM to be around him, but that he wanted some distance from her to "prevent [him] from touching her or thinking in a sexual way to her." Appellant denied touching EM and requested a polygraph.

During his polygraph examination interview a month later, appellant stated that he sexually abused EM on two separate occasions while changing her diaper on top of a dresser that her grandfather made. The first time occurred in May or June of 2018 when appellant spread EM's labia apart and blew into her vagina. After further questioning, appellant asserted that he was just being "curious" and "want[ing] to see what her reaction would be." Appellant further stated that he stopped the abuse after realizing "this is something I should not be doing." Later in the interview appellant described another occasion on which he penetrated EM's vagina with the tip of his pinky finger, which he acknowledged was wrong and sexual in nature. Toward the end of the interview appellant retracted his claim about digitally penetrating EM but again admitted that he blew into her vagina.

After returning to Alabama, MM observed EM attempting to insert several of her toys into her vagina and running away and hiding while saying "shh, he's coming." At trial, the defense expert opined that there was no nexus between EM's sexualized behavior and appellant's alleged misconduct.

## LAW AND DISCUSSION

### A. Military Rule of Evidence 404(b)

Prior to trial, the defense filed a motion to exclude several of appellant's statements under Military Rule of Evidence (Mil. R. Evid.) 404(b), which the military judge granted in part and denied in part. Appellant now specifically claims

that the military judge erroneously failed to exclude his "sucking a dick" and "cum dripping down her face" comments.

To be admissible under Mil. R. Evid. 404(b), a rule of inclusion, evidence of prior misconduct must be offered for a valid purpose and not to demonstrate the accused's criminal propensities. *United States v. Tyndale*, 56 M.J. 209, 212 (C.A.A.F. 2001); *United States v. Jenkins*, 48 M.J. 594, 597 (Army Ct. Crim. App. 1998). Our superior court has established a three-part test for the admissibility of such evidence: (1) the evidence must reasonably tend to prove that the accused committed the uncharged crimes, wrongs, or acts; (2) the evidence must make some fact that is of consequence more or less probable; and (3) the probative value of the evidence must not be substantially outweighed by the danger of unfair prejudice. *United States v. Reynolds*, 29 M.J. 105, 109 (C.M.A. 1989).

We review a military judge's admission of evidence under Mil. R. Evid. 404(b) for abuse of discretion. *United States v. Phillips*, 52 M.J. 268, 272 (C.A.A.F. 2000) (citation omitted). The abuse of discretion standard is deferential, predicating reversal on more than a mere difference of opinion. *United States v. Stellato*, 74 M.J. 473, 480 (C.A.A.F. 2015); *United States v. Gore*, 60 M.J. 178, 187 (C.A.A.F. 2004) ("[T]he abuse of discretion standard of review recognizes that a judge has a wide range of choices and will not be reversed so long as the decision remains within that range.") (citation omitted).

As to the first *Reynolds* prong, the government presented sufficient evidence that appellant made the statements at issue. *See United States v. Dorsey*, 38 M.J. 244, 246 (C.A.A.F. 1993) (noting the standard for meeting the first *Reynolds* factor is "quite low"); *United States v. Swift*, ARMY 20100196, 2017 CCA LEXIS 580 at *10–11 (Army Ct. Crim. App. 29 Aug. 2017) (mem. op.) (stating the testimony of the victim alone was sufficient to support a finding that the appellant committed the instances of uncharged misconduct by a preponderance of the evidence).

Regarding the second factor, evidence of other uncharged acts is admissible to help determine intent, especially in a case like this one, where the "issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct." *United States v. Humphrey*, 57 M.J. 83, 91 (C.A.A.F. 2002) (quoting *United States v. Tanksley*, 54 M.J. 169, 176 (C.A.A.F. 2000)); *see also United States v. Rappaport*, 22 M.J. 445, 447 (C.M.A. 1986) (discussing the relevance of Mil. R. Evid. 404(b) intent evidence and noting it is dependent on whether an appellant had the same state of mind in both the charged and uncharged acts); *Jenkins*, 48 M.J. at 599 (noting that while there is no requirement that the uncharged acts be identical to the charged act, there must still be "sufficient similarity to logically conclude that a similar intent existed").

Applied here, the military judge did not abuse his discretion in determining that the two comments evidenced appellant's "state of mind about Miss [EM] – that she is a sexual object" and "show a motive and intent and rebuts [appellant's] comments in the interview . . . that what he did to Miss [EM] was out of curiosity, accident or to see her reaction." Put another way, appellant's state of mind in making the sexually charged comments about EM bears a sufficient similarity to the state of mind required to sexually abuse her, making it more probable that he committed the charged offenses with the intent "to arouse or gratify the sexual desires of any person." UCMJ art. 120(b).

As the military judge correctly noted in his written ruling, the factors to be considered in the analysis of the third *Reynolds* prong include, *inter alia*, the strength of the proof of the prior act, the probative weight of the evidence, the potential to present less prejudicial evidence, the possible distraction to the fact-finder, the time needed to prove the prior conduct, the temporal proximity of the prior event, the frequency of the acts, the presence of any intervening circumstances, and the relationship between the parties. *United States v. Barnett*, 63 M.J. 388, 396 (C.A.A.F. 2006) (citations omitted). Applying these considerations to the facts before us, we find that the military judge did not abuse his discretion in finding that the probative value of appellant's two sexualized comments about EM was not substantially outweighed by the danger of unfair prejudice. *See United States v. Mann*, 26 M.J. 1, 4 (C.M.A. 1988) (stating that where the appellant claimed that he only innocently bathed or tickled the victim, "intent in doing these acts had become a necessary and contested issue in this case which enhanced the probity of the challenged evidence and justified its admission under Mil. R. Evid. 403") (citations omitted).

### B. Military Rule of Evidence 304(c)

Military Rule of Evidence 304(c)(1) mandates that "[a]n admission or a confession of the accused may be considered as evidence against the accused on the question of guilt or innocence only if independent evidence, either direct or circumstantial, has been admitted into evidence that would tend to establish the trustworthiness of the admission or confession." In pertinent part, Mil. R. Evid. 304(c)(4) states that "[t]he independent evidence necessary to establish corroboration need not be sufficient of itself to establish beyond a reasonable doubt the truth of the facts stated in the admission or confession . . . . [but] need raise only an inference of the truth of the admission or confession." We review a military judge's Mil. R. Evid. 304(c) ruling for abuse of discretion. *United States v. Jones*, 78 M.J. 37, 41 (C.A.A.F. 2018) (citation omitted).

Prior to trial, the defense moved to exclude several of appellant's admissions under Mil. R. Evid. 304(c). At issue now are the following statements, which the military judge allowed into evidence: (1) appellant's admission in his first CID

interview that he had "urges" towards EM; and (2) appellant's admissions in the second CID interview that he blew into and digitally penetrated EM's vagina.

With respect to the "urges" statement, at first blush it is not entirely clear that this constitutes an "admission," as appellant did not confess to acting on his urges. In any event, the military judge noted that he had already found this statement to be admissible under Mil. R. Evid. 404(b) as evidence of appellant's sexually related state of mind towards EM. For all the reasons set forth above, this ruling was not an abuse of discretion, and indeed appellant is not challenging it on appeal. Alternatively, the military judge ruled that appellant's sexually charged statements about the milk running down EM's face and her eating of a carrot corroborated this "urges" admission.[6]

As to appellant's admissions during his second CID interview, the military judge found them to be corroborated by the following independent evidence: (1) EM's post-incident behavior in which she would get naked, remove her diapers, and poke objects and toys into her vagina; (2) appellant's description of the location of the alleged offenses as a changing table on a dresser made by EM's grandfather; and (3) appellant's sexually charged statements about the milk and carrot.

Our superior court has recently reiterated that under Mil. R. Evid. 304(c)(4), the quantum of independent corroborating evidence, which can be either direct or circumstantial, need only be "slight." *Jones*, 78 M.J. at 42 (quoting *United States v. Adams*, 74 M.J. 137, 140 (C.A.A.F. 2015)). As a panel of this court explained:

> "[N]o mathematical formula exists to measure sufficient corroboration." *United States v. Melvin*, 26 M.J. 145, 146 (C.M.A. 1988). However, the "inference [of truthfulness] may be drawn from a quantum of corroborating evidence that [our Superior Court] has described as 'very slight.'"

---

[6] Because Mil. R. Evid. 404(b) provided an alternate and independent basis for the admission of the "urges" statement, we question whether we even need to address appellant's Mil. R. Evid. 304(c) claim with respect to this same evidence. *Cf. United States v. Benton*, 54 M.J. 717, 723 (C.A.A.F. 2001) (noting that because it is a rule of admissibility, Mil. R. Evid. 304 allows for the admission of statements otherwise excludable under the hearsay rules). This is especially true given that the military judge instructed the members that this evidence could only be considered for the limited purpose of showing appellant's state of mind and intent, and rebutting his comments that he acted out of curiosity, accident, or to see EM's reaction. In any event, as discussed *infra*, we find that the military judge's alternate Mil. R. Evid. 304 ruling was not an abuse of discretion.

> *United States v. Arnold*, 61 M.J. 254, 257 (C.A.A.F. 2005)
> (quoting *Melvin*, 26 M.J. at 146). The reason for this
> modest level of corroboration is rooted in the practical
> purpose for the rule, which is to establish the reliability of
> the confession so as to prevent convictions based on false
> confessions. *See United States v. Yeoman*, 25 M.J. 1, 4
> (C.M.A. 1987).

*Swift*, 2017 CCA LEXIS 580 at *19.

Standing alone, appellant's sexually charged comments about his stepdaughter drinking milk and eating a carrot satisfy the "very slight" quantum of corroborating evidence necessary to establish the reliability of all the admissions at issue. *See Jones*, 78 M.J. at 42 (stating that although corroborating circumstantial evidence may not prove an appellant's guilt beyond a reasonable doubt, it still supports an inference that he was speaking the truth when he confessed). As such, the military judge did not abuse his discretion in overruling appellant's Mil. R. Evid. 304(c) objections.

Moreover, the fact that appellant specifically described the location of the alleged offenses further corroborates the admissions he made in his second interview. *See United States v. Arno*, ARMY MISC 20180699, 2019 CCA LEXIS 86 at *5 (Army Ct. Crim. App. 26 Feb. 2019) (per curiam) ("When an accused confesses to committing a certain crime in a certain place in a certain manner, evidence that the accused was actually at that place, and had the specific motive to commit that crime, can be considered when determining whether the confession is trustworthy."). Finally, even though a defense expert testified that there was no nexus between EM's insertion of items into her vagina and the alleged abuse, this opinion evidence goes more to the weight of the confession than to its admissibility. *See* Mil. R. Evid. 304(c)(4) ("The amount and type of evidence introduced as corroboration is a factor to be considered by the trier of fact in determining the weight, if any, to be given to the admission or confession.").[7]

### C. Panel Member Challenge

During individual voir dire Sergeant Major (SGM) DR described his training and previous service as a Sexual Assault Response Coordinator (SARC) and Unit

---

[7] Appellant's claim that the military judge "did not even wait to hear expert testimony regarding this behavior" is incorrect. The military judge heard the defense expert's nexus testimony in an Article 39(a), UCMJ, hearing on the first day of trial, before issuing his Mil. R. Evid. 304 ruling.

Victim Advocate (UVA). While serving as a SARC—an additional duty he had not performed for approximately two years by the time of appellant's court-martial—SGM DR interacted with three adult victims and explained that his role was to act as a "neutral party" to provide support and assist them in getting the "help they need." He did not, however, accompany or assist any of the three alleged victims through the court-martial process. When asked by the defense counsel "was there ever someone that you didn't believe what they were saying," SGM DR replied "No, ma'am." The military judge subsequently followed up:

> Q. Okay. So I--just one question relating to the defense asked you was there any of these three that you did not believe. It seemed like what you were describing before is your job wasn't necessarily to believe or not believe whatever they were saying, it's just to help them through the system?
>
> A. Yes, sir.
>
> Q. Is that correct? That it was really just to help them through the system?
>
> A. That is correct, sir.

Likewise, when questioned by trial counsel, SGM DR confirmed that he could put aside his SARC experiences, follow the military judge's instructions, and base his decision only on the evidence presented at trial rather than his own personal experiences.

Defense counsel challenged SGM DR for cause, asserting both actual and implied bias. Recognizing the liberal grant mandate, the military judge nevertheless denied the challenge, finding that "if objectively viewed through the eyes of the public, [ ] they would not have a substantial doubt about the fairness of the accused's court-martial and the composition of the jury." Among other things, the military judge noted that SGM DR: (1) had a very limited number of victim interactions; (2) acknowledged that as a SARC he was a neutral party who did not determine believability; (3) confirmed that he would follow the judge's instructions; and (4) reiterated that he would set aside his prior SARC experience and decide the case solely on the facts he heard at trial.

Appellant now argues only that the military judge erred in failing to find that SGM DR was impliedly biased. We disagree. Rule for Courts-Martial (R.C.M.) 912(f)(1)(N) provides that a member shall be excused for cause whenever it appears the member "[s]hould not sit as a member in the interest of having the court-martial free from substantial doubt as to legality, fairness, and impartiality." This rule

encompasses challenges based upon both actual and implied bias. *United States v. Elfayoumi*, 66 M.J. 354, 356 (C.A.A.F. 2008) (citing *United States v. Clay*, 64 M.J. 274, 276 (C.A.A.F. 2007)).

Implied bias exists when most people in the member's position would be biased, and is assessed on the totality of the circumstances. *United States v. Strand*, 59 M.J. 455, 459 (C.A.A.F. 2004). The test for implied bias is objective, "viewed through the eyes of the public, focusing on the appearance of fairness." *United States v. Bagstad*, 68 M.J. 460, 462 (C.A.A.F. 2010) (quoting *Clay*, 64 M.J. at 276). The liberal grant mandate requires military judges to "err on the side of granting a challenge." *United States v. Peters*, 74 M.J. 31, 34 (C.A.A.F. 2015).

We review rulings on challenges for implied bias based on a standard that is "less deferential than abuse of discretion, but more deferential than de novo review." *Peters*, 74 M.J. at 33 (quoting *United States v. Moreno*, 63 M.J. 129, 134 (C.A.A.F. 2006)). This is because "cases of implied bias are based upon an objective test and therefore the military judge is given less deference." *Id.* at 34 (quoting *United States v. Miles*, 58 M.J. 192, 194–95 (C.A.A.F. 2003)). Although a military judge is not obligated to place his or her implied bias analysis on the record, "doing so is highly favored and warrants increased deference from appellate courts." *United States v. Dockery*, 76 M.J. 91, 96 (C.A.A.F. 2017) (citing *Clay*, 64 M.J. at 277).

In *United States v. Lugo*, 2013 CCA LEXIS 40 at *5 (N.M. Ct. Crim. App. 29 Jan. 2013) (unpublished), a potential panel member acknowledged that her training as a victim advocate required her to treat victims as if they were telling the truth. Like SGM DR's voir dire responses, the panel member in *Lugo* clarified that her role as a victim advocate was only to provide support and access to services, and not to determine whether any victim was actually telling the truth. *Id.* And like SGM DR, the panel member in *Lugo* confirmed that she could remain fair and impartial despite her experiences. *Id.* at *5–6.

As is also the case here, in *Lugo* the record did not include specific details about the member's experiences as a victim advocate or how those experiences may have impacted her perception of sexual assault offenders or victims. *Id.* at *4–8. Our sister court held that, based on the totality of the circumstances, including the absence of any evidence pertaining to the member's experiences as a victim advocate, the military judge did not abuse his discretion in denying the causal challenge based on implied bias. *Id.* at *8; *see also United States v. Gifford*, 2013 CCA LEXIS 97 at *12 (N.M. Ct. Crim. App. 14 Feb. 2013) (unpublished) (concluding the military judge did not err in denying an implied bias challenge to a member with victim advocate experience who only had two cases, neither of which reached the court-martial process); *cf. United States v. Commisso*, 76 M.J. 315, 325 n.5 (C.A.A.F. 2017) (noting participation on a sexual assault review board or similar entity does not constitute actual or implied bias).

While we recognize that *Lugo* is not binding authority, we find its logic and reasoning to be dispositive here and hold that serving as a SARC or UVA, without more, does not per se disqualify a potential member from serving on the panel. In short, given the totality of the circumstances, including the responses provided by SGM DR, the military judge's well-reasoned explanation, and the fact that the record lacks evidence of any of SGM DR's specific experiences as a SARC, the military judge did not err in denying the causal challenge based on implied bias.

### D. Post-Trial Delay

After the conclusion of appellant's trial on 5 April 2019, counsel received the 941-page transcript on 25 May 2019. Defense counsel completed his review on 2 June 2019, and the military judge received the record of trial (ROT) on 26 July 2019. On 7 August 2019, appellant demanded speedy trial post-trial processing. On 19 September 2019, fifty-six days after receiving it, the military judge authenticated the ROT.

Although the staff judge advocate (SJA) completed his recommendation to the convening authority (SJAR) on 22 October 2019, defense counsel did not receive the ROT and SJAR until 15 January 2020. After receiving an additional twenty days, the defense submitted post-trial matters on 20 February 2020. Over a month later, the SJA submitted his SJAR Addendum on 27 March 2020, and the convening authority took action the same day. Although the SJAR acknowledged the delay, it did not provide any explanation, but merely noted that no corrective action was necessary. Excluding the twenty days for the defense-requested delay to prepare post-trial submissions, a total of 338 days elapsed between adjournment and the convening authority's action.

When confronted with a claim of post-trial delay, this court has two distinct responsibilities. *United States v. Simon*, 64 M.J. 205, 207 (C.A.A.F. 2006) (citing *Toohey v. United States*, 60 M.J. 100, 103–04 (C.A.A.F. 2004)). First, we review de novo whether claims of excessive post-trial delay resulted in a due process violation. *Id.* (citing U.S. Const amend. V; *Diaz v. Judge Advocate General of the Navy*, 59 M.J. 34, 38 (C.A.A.F. 2003)). Second, even if we find no error as a matter of law, we may grant an appellant relief for excessive post-trial delay using our broad authority to determine sentence appropriateness under Article 66, UCMJ. *Id.* (citing *United States v. Tardif*, 57 M.J. 219, 225 (C.A.A.F. 2002)).

Here, appellant seeks relief only under *Tardif* and Article 66, UCMJ, based on the lack of any compelling reason or explanation for the extensive delay in excess of 300 days. Having considered the entire record, we agree, and find that a thirty-day reduction in appellant's sentence to confinement is appropriate.

## CONCLUSION

The findings of guilty are AFFIRMED. After determining an appropriate remedy for the government's dilatory post-trial processing, we AFFIRM only so much of the sentence as provides for a dishonorable discharge, confinement for four years and eleven months, total forfeiture of all pay and allowances, and reduction to E-1. All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the sentence set aside by this decision are ordered restored. *See* UCMJ arts. 58b(c) and 75(a).

Chief Judge (IMA) KRIMBILL and Senior Judge BROOKHART concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court